*Decision will be entered under Rule 50.*

H. L. MORGENSTERN AND CECILIA MORGENSTERN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1232–67.   Filed April 12, 1971

*Jack W. Burnett*, for the petitioners.
*Joe K. Gordon*, for the respondent.

OPINION

FORRESTER, *Judge:* Respondent has determined a deficiency in petitioners' Federal income tax for 1963 in the amount of $8,292.51. The only issue remaining for decision is whether distribution of stock of Hughes Hauling Co. by M & S Construction constituted a partial liquidation within the purview of section 346 of the Internal Revenue Code of 1954.[1]

All facts have been stipulated. The stipulation and exhibits attached thereto are incorporated herein by this reference.

Petitioners herein are H. L. Morgenstern (hereinafter sometimes referred to as Morgenstern or petitioner) and his wife, Cecilia Morgenstern, who both resided in Missoula, Mont., at the time the petition herein was filed. They filed a joint return with the district director of internal revenue, Helena, Mont.

On July 1, 1953, Morgenstern and R. J. Schelt incorporated M & S Construction (hereinafter sometimes referred to as M & S), a Mon-

---

[1] All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated.

tana corporation, which was continually engaged in the active business of road construction and related activities from that date.

Prior to March 1, 1956, M & S was also engaged in the business of hauling equipment. It organized Hughes Hauling Co. (hereinafter sometimes referred to as Hughes), a Montana corporation, to engage in this business on March 1, 1956, and transferred its hauling equipment to Hughes in exchange for 67 percent of that company's common stock. Hughes issued only one class of stock, that being common stock.

By virtue of its 67-percent stock ownership in Hughes, M & S controlled the election of officers and directors of that company from March 1, 1956, to July 24, 1963. M & S also owned the Montana Railroad Commission permit under the authority of which the trucking business was operated.

On July 24, 1963, M & S held a meeting of all stockholders and directors at which the following resolution was adopted.

The stockholders and directors discussed the advisability of partially liquidating this corporation and to redeem a proportionate part of its outstanding capital stock. It was decided that it was advisable and in the best interests of the corporation to distribute to this corporation's stockholders all of the stock owned in Hughes Hauling Co., a Montana corporation, being 67 number of [sic] shares of common stock in said company represented 67% of the outstanding stock in that corporation. The chairman stated that it was fully intended that this partial liquidation qualify under Section 346 of the 1954 Internal Revenue Code.

After deliberation and discussion, upon motion made, seconded and unanimously adopted it was:

RESOLVED that this corporation transfer on the date hereof to the stockholders of this corporation all of the stock owned by this corporation in Hughes Hauling Co., a Montana corporation, in consideration for said stockholders transferring for redemption and cancellation, in proportionate amounts, a total number of 191.22 shares of stock of this corporation.

On the same date, M & S distributed 33.5 shares in Hughes to Morgenstern and 33.5 shares to R. J. Schelt in return for 95.61 shares of M & S stock from each. The fair market value of the 33.5 shares as of July 24, 1963, was $50,295.70.

Hughes liquidated on August 6, 1963. Up until that date it had continually engaged in the active conduct of the trucking business for more than 5 years.

In their 1963 tax return petitioners valued the M & S stock which they had exchanged at $33,741.34 and reported that amount (minus their basis of $8,477.33) as a long-term capital gain. In his notice of deficiency respondent determined that the receipt of Hughes' stock, which was valued at $50,295.70, constituted a preferential dividend taxable to the extent of $31,141.15, an amount representing the earned surplus of M & S.

Petitioner received stock in Hughes in exchange for stock in M & S. Petitioner argues that the transaction was a partial liquidation [2] under section 346(a)(2) and 346(b)[3] and, accordingly, the distribution is taxable at capital gain rates. On the other hand, respondent argues that the transaction does not qualify under those sections and accordingly the value of the Hughes' stock received in the prorata redemption of M & S stock is taxable as a preferential dividend to the extent of the earnings and profits of M & S. The only bone of contention between the parties is whether the distribution was, as required by section 346(b)(1), attributable to M & S ceasing the active conduct of a trade or business.

Under section 1.346-1(c), Income Tax Regs., the term "active conduct of a trade or business" is defined as follows:

(c) *Active conduct of a trade or business.* For the purpose of section 346(b)(1), a corporation shall be deemed to have actively conducted a trade or business immediately before the distribution, if:

(1) In the case of a business the assets of which have been distributed in kind, the business was operated by such corporation until the date of distribution, or

(2) In the case of a business the proceeds of the sale of the assets of which are distributed, such business was actively conducted until the date of sale and the proceeds of such sale were distributed as soon thereafter as reasonably possible.

The term "active conduct of a trade or business" shall have the same meaning in this section as in paragraph (c) of § 1.355-1.

Pertinent parts of section 1.355-1(c), Income Tax Regs., state:

---

[2] He does not argue that the transaction meets the requirements of sec. 346(a)(2) other than through application of sec. 346(b)(2).

[3] SEC. 346. PARTIAL LIQUIDATION DEFINED.

(a) IN GENERAL.—For purposes of this subchapter, a distribution shall be treated as in partial liquidation of a corporation if—

\* \* \* \* \* \* \*

(2) the distribution is not essentially equivalent to a dividend, is in redemption of a part of the stock of the corporation pursuant to a plan, and occurs within the taxable year in which the plan is adopted or within the succeeding taxable year, including (but not limited to) a distribution which meets the requirements of subsection (b).

\* \* \* \* \* \* \*

(b) TERMINATION OF A BUSINESS.—A distribution shall be treated as a distribution described in subsection (a)(2) if the requirements of paragraphs (1) and (2) of this subsection are met.

(1) The distribution is attributable to the corporation's ceasing to conduct, or consists of the assets of, a trade or business which has been actively conducted throughout the 5-year period immediately before the distribution, which trade or business was not acquired by the corporation within such period in a transaction in which gain or loss was recognized in whole or in part.

(2) Immediately after the distribution the liquidating corporation is actively engaged in the conduct of a trade or business, which trade or business was actively conducted throughout the 5-year period ending on the date of the distribution and was not acquired by the corporation within such period in a transaction in which gain or loss was recognized in whole or in part.

Whether or not a distribution meets the requirements of paragraphs (1) and (2) of this subsection shall be determined without regard to whether or not the distribution is pro rata with respect to all of the shareholders of the corporation.

(c) *Active business.* Section 355 is not applicable unless the controlled corporation and the distributing corporation are each engaged in the active conduct of a trade or business. * * * a trade or business consists of a specific existing group of activities being carried on for the purpose of earning income or profit from only such group of activities, and the activities included in such group must include every operation which forms a part of, or a step in, the process of earning income or profit from such group. Such group of activities ordinarily must include the collection of income and the payment of expenses. It does not include—

(1) The holding for investment purposes of stock, securities, land or other property, including casual sales thereof (whether or not the proceeds of such sales are reinvested),

Petitioners contend that since M & S controlled Hughes through its majority stock ownership, it may be said to have actively conducted Hughes' business.

It is well settled that a corporation is a separate and distinct legal entity from its stockholders; *New Colonial Co.* v. *Helvering*, 292 U.S. 435 (1934); *Burnet* v. *Clark*, 287 U.S. 410 (1932); and that a close relationship between a corporation and its sole stockholder standing alone is no reason for disregarding the separate entity. See *Moline Properties* v. *Commissioner*, 319 U.S. 436 (1943). *A fortiori* a close relationship between a majority shareholder and his corporation dictates no different result. In the instant case, there is no evidence that Hughes was not operating in all respects as a corporation separate from M & S and, accordingly, we can perceive no reason why the above rule should not apply.

The statute requires that the distribution be attributable to the ceasing of conduct of an active trade or business by M & S. As we read this requirement, in order to qualify under section 346(b)(1), the business which is terminated must be operated directly by the corporation making the distribution. The legislative history confirms this view. Therein it is stated (S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. No. 591), 83d Cong., 2d Sess., p. 262 (1954)):

Subsection (b) provides a description of one kind of distribution which will be considered as being in partial liquidation. Paragraphs (1) and (2) contemplate that the distributing corporation must be engaged in the active conduct of at least 2 businesses which have been actively conducted (whether or not by it) for the 5-year period ending on the date of the distribution. * * *

Clearly, an in-kind distribution of assets or their cash equivalent implicitly assumes that the business involved was operated directly by the distributor.

Since Hughes must be viewed as a separate and distinct entity, we hold that the transaction does not qualify under section 346(b) as a partial liquidation and the distribution is taxable as a dividend to the extent of the earnings and profits of M & S under section 301.

*Decision will be entered for the respondent.*